**Harry GAMLEN, Harry C. Gamlen and James E. Gamlen, co-partners doing business as Gamlen Chemical Company, Petitioners,**

v.

**UNITED STATES of America, Respondent.**

**No. 13851.**

United States Court of Appeals District of Columbia Circuit.

Submitted Sept. 18, 1958.

Decided Oct. 2, 1958.

Mr. Rawlings Ragland, Washington, D. C., submitted on the brief for petitioners.

Asst. Atty. Gen. George C. Doub and Messrs. Morton Hollander and James H. Prentice, Attys., Dept. of Justice, submitted on the brief for respondent.

Before FAHY, DANAHER and BASTIAN, Circuit Judges.

PER CURIAM.

Petitioners in 1944 through their partnerships received or had accrued $558,-288 on account of contracts or subcontracts subject to renegotiation. The War Contracts Price Adjustment Board determined that petitioners had realized excessive profits within the meaning of the Renegotiation Act of 1943 [1] in the amount of $100,000. Claiming that the determination of excessive profits should

---

6. Id., 97 U.S.App.D.C. at page 316, 231 F.2d at page 475.

7. Supra note 5. 

1. 58 Stat. 78, as amended, 50 U.S.C.Appendix, § 1191, (1952), 50 U.S.C.A.Appendix, § 1191.

be limited to $58,288, petitioners sought a redetermination in the Tax Court. The Tax Court upheld the Board.

On this appeal petitioners rely upon Renegotiation Regulation 348.3 [2] which the Tax Court previously held to have been invalidly adopted by the Board as beyond the authority conferred by the Act. The Renegotiation Act of 1943 in § 403(c) (6) provides an exemption from renegotiation of amounts received or accrued which do not exceed $500,000 for a particular fiscal year. Although Congress had been urged to eliminate the first $500,000 of receipts exceeding that amount, it refused to do so. On the contrary, such contract receipts in a given fiscal year remained subject to review by the Board. Once the Board's jurisdiction attached on the basis of dollar amount, whatever excessive profits were finally determined to have arisen were to be the subject of renegotiation and ultimate recovery by the Government.

Congress in § 403(a) (4) (A) of the Act specified certain factors which were to be considered by the Board in its determination of what profits were "excessive" including, *inter alia*, "such other factors the consideration of which the public interest and fair and equitable dealing may require, which factors shall be published in the regulations of the Board from time to time as adopted."

Petitioners would have us say that the regulation upon which they rely [3] was intended to be given effect in terms of the requirement of that factor for "fair and equitable dealing." [4] They argue that it is neither fair nor equitable that a contractor with receipts of $499,000, e. g., should be exempted from renegotiation while one with receipts of $500,001 should be subject to a determination that the payments to him reflected "excessive"

2. 32 C.F.R. ch. XIV, § 1603.348 (Supp. 1945).

3. Supra note 2.

4. The House Committee on Ways and Means specified that this "fair and

profits of $100,000 or any other amount. The answer is that Congress, although it explored that very problem when the legislation was under consideration, did not write the Act as the petitioners would have us read it. Whatever guidance the Board may have supposed its regulation might afford to its negotiating representatives in their conferences with contractors, the Board certainly lacked authority to exempt from renegotiation such receipts as Congress declared should remain subject to a determination as to excessive profits.

The decision of the Tax Court must be and is

Affirmed.

equitable" factor should be considered and applied in computing excessive profits as related to the contractor's financial problems likely to arise in his post-war reconversion situation. See H.R.Rep. No. 871, 78th Cong., 1st Sess. (1943) to accompany H.R. 3687.